E-FILED
Tuesday, 09 March, 2010 12:08:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOY DENISE MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-1224 |
| | ) | |
| SODEXO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# O R D E R

This matter is now before the Court on Defendant's Motion for Summary Judgment. For the reasons set forth below, the Motion for Summary Judgment [#31] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted arise pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. § 12112, et seq.

## FACTUAL BACKGROUND

Defendant, Sodexo, Inc. ("Sodexo"), operates a cafeteria at Eureka College, serving breakfast, lunch, and dinner to students and faculty every day, with the exception of certain school breaks and holidays. During each meal, Sodexo employs a checker who is responsible for taking care of the dining room, restocking coffee/juice/bagels/bread/ condiments, wiping down tables and chairs, tidying up the dining room, and checking-in the students and faculty. To check-in guests, the checker either accepts cash or swipes a pre-paid card from the patrons, with each swipe taking only a few seconds and cash

transactions taking only slightly longer. By the time of the 2007-08 school year at issue in this case, most of the transactions were handled by swiping the pre-paid cards.

Plaintiff, Joy Denise Myers ("Myers"), was employed by Sodexo as a checker from approximately 1990 to March 11, 2008. Prior to the 2007-08 school year, Myers had worked Monday through Friday from 6:00am to 2:00pm with a 15-minute paid break and a 30-minute meal break. Breakfast was served from 7:15am to 9:00am, and lunch was served from 10:45am to 12:45am, but there was often downtime during these meal periods when there were no students or faculty to check-in. The checker would sit at a desk and check-in diners, while another employee served as a runner to take care of the other duties in the dining room identified above. During the time that a meal was not being served, Myers was responsible for cleaning the dining room, restocking items, and getting the dining room ready for the next meal.

The employee who had worked as the runner during Myers' shifts quit at the end of the 2006-2007 school year, and Sodexo chose not to replace her because business had declined to the point that it was unprofitable to maintain two employees for the dining room. As a result, when the 2007-2008 school year commenced, the runner's duties were distributed among four other employees, including Myers. As a result of this change, Myers was the only employee who worked in the dining room during the breakfast and lunch periods during the weekdays. All checkers no longer just checked-in diners, but also had to wipe tables, counters, and chairs, restock food and drink items, and take care of the dining room. All checkers worked behind a podium without a chair when checking in diners; no checker had a chair.

Upon returning to work after the summer break in August 2007, Myers noticed that there was no longer a chair at the checker's station. She told Kathy Moore ("Moore"), Sodexo's General Manager at Eureka College, that she could not stand for very long and wanted the chair back. Sodexo then requested information about Myers' need for a chair. Myers brought in a note from Dr. Amy Zacharias stating, "Please allow patient to sit during student check-in due to medical illness." Upon receiving this note, Sodexo requested additional information regarding Myers' illness and sitting requirements. Myers responded with a second note from Dr. Zacharias stating, "Patient has a [diagnosis of] fibromyalgia and due to this[,] patient has difficulty standing for long periods of time. Please allow patient to sit 1 hour in am and 2 hours at lunch until further recommendations can be made by rheumatologist. Patient will be seeing him in next several weeks."

On September 6, 2007, Myers met with Harold Taegel, Sodexo's Senior Director of Labor Relations and a union representative regarding Dr. Zacharias' notes. During the meeting, Myers' request for a chair to sit in during check-in was denied. However, the parties created a work schedule that would allow her to work from 6:30 am to 3:45 pm with a one-hour sitting break in the morning and a two-hour sitting break at lunch. Myers was not happy with this accommodation but agreed to try the new schedule.

On September 10, 2007, Myers provided a third note from Dr. Zacharias stating, "Patient has fibromyalgia and I would recommend she be allowed to sit intermittently during 7:15-9 am breakfast period and 10:45-12:45 lunch period to check students in. It is not necessary to sit for a consecutive period of time." Sodexo again declined to provide her with a chair to sit in during check-in, but modified her schedule to work 6:30 am to 2:45 pm with five 10-minute breaks spread intermittently throughout the day, in addition to her usual

15 minute break and 30 minute meal break. Myers remained unhappy with this schedule, as she wanted to go back to her 6:00 am to 2:00 pm schedule and be able to sit while checking in students during the breakfast and lunch hours.

Myers then brought in a note dated September 19, 2007, from Cyndee Dickinson, a nurse in her rheumatologist's office, stating, "Resume normal 6 am - 2 pm work schedule. Due to fibromyalgia, sit as needed." In another meeting attended by Myers, Jeff Lataille ("Lataille"), Sodexo's District Manager, and a union representative, Sodexo again declined to provide her with a chair to sit during check-in, but rather returned her to the 6:00 am to 2:00 pm work schedule and allowed her to take sitting breaks as needed. She remained unsatisfied but again agreed to try the new schedule.

Myers took several medical leaves during this semester. After returning from these leaves, she was still unhappy with Sodexo's attempt to accommodate her needs. Accordingly, in March 2008, Myers provided a note from her rheumatologist, Dr. Mark Getz, stating, "Sit as needed during work schedule." On March 11, 2008, Myers, Lataille, Moore, and union representatives attended another meeting to discuss this request. At this meeting, Sodexo offered her several options: (1) a lateral transfer to a job in the dish room where she could sit whenever she wanted without needing to find someone to replace her; (2) staying in her checker job and receiving up to two more breaks in addition to her 30 minute lunch break and her 15 minute break where she could sit; (3) reducing her work schedule to 20 hours per week so her workdays would be shorter; and (4) allowing her to go home if she believed she was not well enough to do her job. Following the meeting, Myers ended the dialog to establish an appropriate accommodation, went on extended medical leave, and never returned to work.

On or about June 6, 2008, Myers applied for Social Security Disability Income ("SSDI") benefits because she believed she was unable to work. She was deemed totally disabled and received an award of SSDI benefits. Myers is unable to work at all outside the home in any type of job and believes that she will never be able to work again.

On September 5, 2008, Myers filed her complaint in this matter, alleging that Sodexo violated the Americans With Disabilities Act (the "ADA") by failing to accommodate her disability, discriminating against her on the basis of her disability, and retaliation. Sodexho has moved for summary judgment. The matter is now fully briefed and ready for resolution. This Order follows.

**LEGAL STANDARD**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual" with regard to the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996). The ADA also provides that an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

However, a failure to accommodate claim arises only if the employee first satisfies the requirement of demonstrating that she suffers from a disability within the meaning of the statute. Szmaj v. American Telephone & Telegraph Co., 291 F.3d 955, 956 (7th Cir. 2002) (holding that the ADA does not impose a duty of accommodation and that the duty of accommodation arises only if the employee is first determined to have a disability within the meaning of the Act); Cebertowicz v. Motorola, Inc., 2001 WL 1672242, at *2 (N.D.Ill.), *citing* Weber v. Strippit, Inc., 186 F.3d 907, 917 (8th Cir. 1999), and Newberry v. East

Texas State University, 161 F.3d 276, 280 (5th Cir. 1998). The Seventh Circuit has defined the prima facie showing required of an ADA plaintiff for failure to accommodate as follows:

> (1) she was disabled; (2) the [employer] was aware of her disability; and (3) she was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position.

McPhaul v. Board of Commissioners of Madison County, 226 F.3d 558, 563 (7th Cir. 2000), *citing* Feldman v. American Memorial Life Ins. Co., 196 F.3d 783, 789 (7th Cir. 1999).

Sodexho first contends that Myers was not a qualified individual under the ADA. Under the terms of the statute, a claimant must be a qualified individual with a disability, which is further defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); McPhaul v. Baord of Commissioners of Madison County, 226 F.3d 558, 563 (7th Cir. 2000). This determination must be made as of the time of the employment decision, and Myers bears the burden of proof on this issue. McPhaul, 226 F.3d at 563, *citing* Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1284 (7th Cir. 1996).

A person is "disabled" under the ADA if he has (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); Riemer v. Illinois Department of Transportation, 148 F.3d 800, 804 (7th Cir. 1998). For purposes of resolving this Motion only, Sodexo concedes that Myers is disabled within the meaning of the ADA.

The question then becomes whether Myers is a qualified individual under the ADA. To be deemed a "qualified individual" with a disability, a plaintiff must establish that she

"with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Jackson v. City of Chicago, 414 F.3d 806, 811 (7th Cir. July 12, 2005); Rooney v. Koch Air, LLC, 410 F.3d 376, 380 (7th Cir. 2005). To determine whether a job function is essential, courts look to "the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position." Id., at 382, *citing* Basith v. Cook County, 241 F.3d 919, 927 (7th Cir. 2001); 29 C.F.R. § 1630.2(n). If the employer has a written job description for the position, the description is considered evidence of the essential functions of the job, and the statute explicitly gives consideration to the employer's judgment regarding which functions of the job are essential. Jackson, 414 F.3d at 811.

Here, Sodexo argues that Myers was unable to perform the essential functions of her checker job despite the provision of all medically substantiated accommodations. In this respect, Sodexo asserts that as the only employee in the dining room during her shifts, it was essential for her to move around and attend to all areas that needed attention when not checking-in diners. Sodexo further maintains that it would not have been possible for Myers to perform all of these duties if she had been sitting in a chair during the entire meal periods of her shifts.

Myers has admitted that there was often downtime during meal periods when there was no one to check-in, and she could do other things. She also admits that beginning in the 2007-08 school year when there was no longer a runner to help with the dining room, her duties included wiping tables, counters, and chairs, restocking food and drink items, and taking care of the dining room in addition to the time spent checking-in guests.

Accordingly, there is no real dispute that these duties other than checking-in guests were essential to Myers' job at that time.

Myers' response on this issue consists solely of her own Affidavit asserting that she had been able to perform her duties "perfectly well" with a desk and chair, and could have continued to perform them had she been given the chair as requested. She then summarily states, "At all times between August 2007 and March 11, 2009, plaintiff would have been able to perform all of the duties required of her if she had been given a chair to sit while checking students in during the breakfast and lunch times." This response completely fails to acknowledge the fact that her duties had changed beginning that fall and that her responsibilities were no longer limited to checking-in guests during the meal periods. Rather, it is undisputed that beginning in fall 2007, she had to spend a portion of her time on her feet and moving around the dining room. She does not in any way indicate that she could have adequately performed the remainder of her duties (e.g., cleaning and restocking the dining room) or how the provision of a chair during the times she was checking-in guests would have made it possible for her to perform these other duties. This deficiency is particularly apparent in light of the admission in ¶¶ 11, 15, 18, and 23 of her Declaration that she was not physically able to perform her job even with the accommodations offered by Sodexo. Significantly, in ¶ 18 of her Declaration, she states that it was clear that she could not perform her job even after being granted a return to her former work schedule and the ability to take sitting breaks whenever she needed, which was essentially the most substantial accommodation requested by her doctors. She focuses instead on her own demand that the desk and chair that she had used in the past to check-in guests be returned to her, but nowhere in her doctor's notes is the express

requirement that she be allowed to sit at a desk the entire time she was checking-in students each day.

While the first note indicated vaguely that she needed to sit during student check-in, the second note clarified that she needed a one-hour sitting break in the morning and a two-hour sitting break in the afternoon. Once this accommodation was made, the third note essentially rejected the first two notes and clarified that she be allowed to sit intermittently during the morning and lunch periods and that it was not necessary for her to sit for a consecutive period of time. When this recommendation was accommodated by the addition of five 10-minute intermittent sitting breaks throughout the day, the fourth note requested that Myers be allowed to sit as needed. Myers was then allowed to take sitting breaks whenever she needed during her shift, which was followed by a fifth note advising that she be allowed to sit as needed during work schedule. The applicable notes clearly state only that she needed to be allowed to sit intermittently or as needed during her shift.

Furthermore, Myers has failed to support her assertion with admissible evidence. The claim that she would have been able to complete all essential tasks required of her in her position if given her chair and desk is a medical opinion that must be supported by medical evidence rather than self-serving speculation. None of her doctor's notes come close to establishing that with the provision of a chair and desk during guest check-in, Myers would have been able to perform the remainder of her essential duties. In fact, the doctor's notes do not even indicate an awareness that she had duties other than checking-in guests. *See* Am. Int'l Adjustment Co. v. Galvin, 86 F.3d 1455, 1464 (7th Cir. 1996) (holding that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process, and his naked opinion does not preclude summary judgment.")

Myers bears the burden of establishing that she could perform the essential functions of her position with reasonable accommodation. McPhaul v. Board of Commissioners of Madison County, 226 F.3d 558, 563 (7th Cir. 2000). Where a plaintiff presents only her own self-serving testimony and fails to provide medical evidence to support the claim that the requested accommodation would have allowed her to perform the essential functions of her position, "that is just not sufficient for a reasonable jury to find that she is a qualified individual with a disability under the ADA." Id., at 564, *citing* Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (1993); Basith, 241 F.3d at 930 (noting that plaintiff failed to provide evidence to substantiate his ADA claim, such as a report from his doctor that he could fully perform the essential functions with the requested accommodation); Martin v. Dekalb County Central United School District, 2005 WL 1869085, at *8 (N.D.Ind. Aug. 3, 2005) (finding that even where plaintiff had provided expert opinion in support of ADA claim, he failed to establish that he was capable of performing essential functions with reasonable accommodation where expert did not indicate any knowledge of the essential functions of the job or how the recommended accommodations would enable him to perform the other job functions); Shivakumar v. Abbott Laboratories, 2001 WL 775967, at *9 (N.D.Ill. July 10, 2001) ("Plaintiff offers no competent evidence in support of her opinion, and her own conclusion [that an accommodation would have enabled her to perform the essential functions of her job] is not sufficient to defeat summary judgment"). She has therefore failed to raise a genuine issue of material fact as to her ability to perform the essential functions of her position with reasonable accommodation. Accordingly, Myers' has failed to establish that she is a qualified individual with a disability, and her ADA claims must fail.

Even assuming arguendo that Myers had made a sufficient showing of her prima facie case to survive summary judgment, Sodexho contends that it did not fail to provide any reasonable accommodation that was medically substantiated. Failure to accommodate a known disability can constitute discrimination under the ADA, unless doing so would impose an undue hardship on the employer. 42 U.S.C. §§ 12112(a), (b)(5)(A). To maintain a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate that disability. Ekstrand v. School District of Somerset, 583 F.3d 972, 975 (7th Cir. 2009).

As discussed above, the record indicates that Sodexho engaged in a dialog with Myers in an effort to offer her reasonable accommodations based on her doctors' notes. In the third, fourth, and fifth notes (i.e., the only notes that were not effectively withdrawn by contradictory directions in subsequent notes), the doctors indicated that she should be allowed to sit intermittently or sit as needed. They did not request that she be given back her old desk and chair and allowed to perform her job from that sitting position or otherwise address the functions of her job that did not involve checking-in guests. Thus, Myers has not established that the need to perform her job from the desk and chair rather than by taking sitting breaks as needed was anything other than her own personal preference.

Once an employer becomes aware of an employee's disability, it must make good faith efforts to reach a reasonable accommodation. Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996); Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 693 (7th Cir. 1998). That being said, employers are not required to provide the precise accommodation requested by an employee, particularly where the employee's

request is not adequately substantiated by medical documentation; the employer is only required to provide an accommodation that is reasonable in terms of costs and benefits. Mays v. Principi, 301 F.3d 866, 871-72 (7th Cir. 2002); Malabarba v. Chicago Tribune Co., 149 F.3d 690, 699 (7th Cir. 1998) (noting that an employee is not entitled to the best or employee-preferred accommodations, only an accommodation that is reasonable); Schmidt v. Methodist Hospital, 89 F.3d 342 (7th Cir. 1996); Miranda v. Wisconsin Power & Light Co., 91 F.3d 1011, 1016 (7th Cir. 1996). Moreover, in light of the fact that Sodexo has offered the legitimate business rationale of needing to make sure that the dining room was also taken care of during the majority of the time when the checker was not checking-in guests, which Myers has made no real effort to rebut, the Court cannot find that Sodexo failed to provide her with reasonable accommodations.

The record indicates that Sodexo even offered Myers part-time status, a lateral transfer to another position in the dish room that would allow her to perform the position while sitting the entire time, or the ability to leave and go home when she no longer felt well enough to do her job. Henricks-Robinson v. Excel Corp., 154 F.3d 685, 693-95 (7th Cir. 1998) (finding that an employer may reasonably satisfy its duty to accommodate by reassigning a plaintiff to a vacant position for which she is qualified, even if that reassignment represents a demotion.) Rather than accept any of the offered accommodations, Myers withdrew from the dialog and never returned to her job. *See* Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996) (finding that the employer is liable only if it bears the responsbility for the breakdown of the interactive process.) Sodexo is entitled to summary judgment on her failure to accommodate claim for this reason, as well.

Sodexo further asserts that Myers' discrimination and retaliation claims fail for lack of evidence that similarly situated, non-disabled employees were treated more favorably or any evidence supporting a finding of pretext. Under the ADA, disability discrimination requires a showing that: (1) the plaintiff is disabled within the meaning of the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she was subject to an adverse employment action; and (4) similarly situated employees were treated more favorably. Kampmier v. Emeritus Corp., 472 F.3d 930, 937 (7th Cir. 2007); Rooney v. Koch Air, LLC, 410 F.3d 376, 380-81 (7th Cir. 2005).

Myers argues that the inference of discrimination is appropriate because she was the only disabled checker, and there are therefore no similarly situated co-workers. However, this argument is inapposite. The fourth factor of the prima facie case requires that she demonstrate that similarly situated employees were treated more favorably because they were not disabled. She makes no attempt to introduce admissible evidence to this effect, as her response consists of one paragraph maintaining that no one else was disabled. Moreover, Myers concedes that "[a]ll checkers, including plaintiff, no longer just checked-in diners during meal periods, but they also wiped tables, counters, and chairs, restocked food and drink items and '[p]retty much just [took] care of the dining room'" and that [a]ll checkers on every shift work behind a podium without a chair when they check-in diners. No one has a chair." (Myers' Response to Undisputed Facts 17 and 40). This essentially amounts to an admission that she was not treated less favorably than other checkers who were not disabled and is fatal to her discrimination claim.

Finally, Sodexo challenges that even if she could establish her prima facie case, Myers' discrimination and retaliation claims must fail because she has offered no evidence

of pretext. If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004). If this is done, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason was merely a pretext for intentional discrimination or retaliation. Id. Pretext can be shown by evidence suggesting that the proffered reason was factually baseless, was not the actual motivation, or was insufficient to motivate the employer's action. Grube v. Lau Industries, Inc., 257 F.3d 723, 729 (7th Cir. 2001).

Sodexo has introduced evidence supporting its position that with Myers being the only employee in the dining room during meal time, it could not allow her to sit in a chair at the check-out desk for the entire meal period because there would then be no one to take care of the dining room by wiping tables, restocking supplies, refilling condiments, etc. Paying a second employee to perform these tasks in order to allow Myers to remain seated the entire time was no longer profitable. Myers admits these facts and makes no effort to rebut them. (Myers' response to Undisputed Facts 15, 16, 17, and 18)

Myers' only attempt to demonstrate pretext is her own declaration that had she been provided with a chair to use while checking-in diners, she would have been able to get up to perform all of the other duties as necessary. As stated previously in this Order, the Court has found her self-serving statement to be insufficient to raise a genuine issue of material fact, as it stands alone, unsupported by medical evidence of record. Her assertion also falls short of establishing that Sodexo's reasons were false, baseless, or actually motivated by her disability. It therefore fails to meet her burden of establishing pretext, and Sodexo is entitled to summary judgment on her discrimination and retaliation claims for this

additional reason. Cassimy v. Board of Education of Rockford Public Schools, 461 F.3d 932, 939 (7th Cir. 2006).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [#31] is GRANTED. All existing hearings and deadlines are VACATED, and this matter is now TERMINATED.

ENTERED this 9th day of March, 2010.

                                                s/ Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge